

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

APR 2 3 2015
4-23-15
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | 09 CR 383 |
| JOAQUIN GUZMAN LOERA <br> (a/k/a "Chapo"), <br> ISMAEL ZAMBADA GARCIA <br> (a/k/a "Mayo"), <br> JESUS ALFREDO GUZMAN SALAZAR <br> (a/k/a "Alfredillo" and "JAGS"), <br> HERIBERTO ZAZUETA GODOY, <br> (a/k/a "Capi Beto"), <br> VICTOR MANUEL FELIX BELTRAN, <br> (a/k/a "Lic Vicc"), <br> JESUS RAUL BELTRAN LEON, <br> (a/k/a "Trevol" and "Chuy Raul"), <br> HECTOR MIGUEL VALENCIA ORTEGA, <br> (a/k/a "MV"), <br> JORGE MARIO VALENZUELA VERDUGO <br> (a/k/a "Choclos"), and <br> GUADALUPE FERNANDEZ VALENCIA <br> (a/k/a "Don Julio" and "Julia") | Ruben Castillo <br> Chief Judge <br><br> JUDGE CASTILLO <br> Mag. Judge Ashman <br><br> Violations: Title 21, United States Code, Sections 841, 846, 963, and Title 18, United States Code, Section 1956(h). <br><br> **NINTH SUPERSEDING INDICTMENT** |

## COUNT ONE

The SPECIAL JULY 2013 GRAND JURY charges:

1.     Beginning no later than in or about May 2005, and continuing until at least in or about December 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOAQUIN GUZMAN LOERA (a/k/a "Chapo"),
ISMAEL ZAMBADA GARCIA (a/k/a "Mayo"),
JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo" and "JAGS"),

1

HERIBERTO ZAZUETA GODOY (a/k/a "Capi Beto"),
VICTOR MANUEL FELIX BELTRAN (a/k/a "Lic Vicc"),
JESUS RAUL BELTRAN LEON (a/k/a "Trevol" and "Chuy Raul"),
HECTOR MIGUEL VALENCIA ORTEGA (a/k/a "MV"),
JORGE MARIO VALENZUELA VERDUGO (a/k/a "Choclos"), and
GUADALUPE FERNANDEZ VALENCIA (a/k/a "Don Julio" and "Julia"),

defendants herein, did conspire with each other, with Vicente Zambada Niebla, Felipe Cabrera Sarabia, German Olivares, Manuel Fernandez Navarro, Edgar Manuel Valencia Ortega, Pedro Flores, Margarito Flores, and with others known and unknown to the Grand Jury, knowingly and intentionally to possess with intent to distribute and distribute a controlled substance, namely 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

*Overview of the Conspiracy*

2.     It was part of the conspiracy that defendants JOAQUIN GUZMAN LOERA and ISMAEL ZAMBADA GARCIA were the co-leaders of a transnational drug trafficking organization based in Mexico known as the "Sinaloa Cartel."   Under the leadership of GUZMAN LOERA and ZAMBADA GARCIA, the Sinaloa Cartel operated as an affiliation of drug traffickers and money launderers located in multiple countries throughout the world who coordinated and pooled their collective resources in order to: (1) transport drugs from countries of supply in Central and South America to Mexico; (2) transport drugs through Mexico and into the United States; (3) distribute drugs to wholesale customers in the United States; and (4) collect, launder, and transfer the proceeds of drug trafficking.

3.     It was further part of the conspiracy that GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, and BELTRAN LEON, coordinated their drug trafficking activities to import large quantities of cocaine from Central and South American countries, including Colombia, Ecuador, Venezuela, Peru, Panama, Costa Rica, Honduras, and Guatemala, to Mexico. GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under

them, including GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, and VALENZUELA VERDUGO, coordinated the unloading of large shipments of cocaine in Mexico, and coordinated the transportation and storage of these shipments within Mexico. GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA coordinated their drug trafficking activities to smuggle large quantities of cocaine, generally in shipments of hundreds of kilograms at a time, as well as multi-kilogram quantities of heroin, methamphetamine, and marijuana, from Mexico across the United States border, and then into and throughout the United States, including Chicago, Illinois, and elsewhere.

*Members of the Conspiracy*

4.      It was further part of the conspiracy that defendants JOAQUIN GUZMAN LOERA (a/k/a "Chapo") and ISMAEL ZAMBADA GARCIA (a/k/a "Mayo") were the two leaders of the Sinaloa Cartel. GUZMAN LOERA and ZAMBADA GARCIA each negotiated the price for and caused to be obtained large quantities of cocaine from Central and South American countries to Mexico, and caused multi-kilogram quantities of cocaine, heroin,

4

methamphetamine, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States. GUZMAN LOERA and ZAMBADA GARCIA each further caused drug proceeds to be laundered and transferred from the United States to Mexico and elsewhere.

5.     It was further part of the conspiracy that defendant JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo" and "JAGS"), the son of GUZMAN LOERA, acted as a logistical coordinator who, on behalf of defendant GUZMAN LOERA and the Sinaloa Cartel's members and associates, caused multi-kilogram quantities of cocaine, heroin, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. GUZMAN SALAZAR further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates.

6.     It was further part of the conspiracy that defendant HERIBERTO ZAZUETA GODOY (a/k/a "Capi Beto") was the leader of a cell of the Sinaloa Cartel. ZAZUETA GODOY negotiated the price for and caused to be obtained large quantities of cocaine from Central and South American countries and

caused multi-kilogram quantities of cocaine, heroin, and methamphetamine to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. ZAZUETA GODOY further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere.

7.     It was further part of the conspiracy that defendant VICTOR MANUEL FELIX BELTRAN (a/k/a "Lic Vicc"), the brother-in-law of GUZMAN SALAZAR, acted as a lieutenant for GUZMAN SALAZAR who caused multi-kilogram quantities of cocaine to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. FELIX BELTRAN further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates.

8.     It was further part of the conspiracy that defendant JESUS RAUL BELTRAN LEON (a/k/a "Trevol" and "Chuy Raul"), the brother-in-law of FELIX BELTRAN and GUZMAN SALAZAR, acted as a lieutenant for GUZMAN SALAZAR and a narcotics broker within the Sinaloa Cartel who caused multi-kilogram quantities of cocaine and marijuana to be transported from Mexico to the United States border, and then into and throughout the

United States for distribution. BELTRAN LEON further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates.

9.    It was further part of the conspiracy that defendant HECTOR MIGUEL VALENCIA ORTEGA (a/k/a "MV") caused deliveries of multi-kilogram quantities of cocaine into the United States, and caused distributions of multi-kilogram quantities of cocaine in the United States. VALENCIA ORTEGA further caused drug proceeds to be collected from the Sinaloa Cartel's customers in the United States and laundered and transferred from the United States to Mexico and elsewhere.

10.    It was further part of the conspiracy that defendant JORGE MARIO VALENZUELA VERDUGO (a/k/a "Choclos") acted as a lieutenant for GUZMAN SALAZAR within the Sinaloa Cartel who caused multi-kilogram quantities of cocaine to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. VALENZUELA VERDUGO further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates.

7

11. It was further part of the conspiracy that defendant GUADALUPE FERNANDEZ VALENCIA (a/k/a "Don Julio" and "Julia") acted as a lieutenant for GUZMAN SALAZAR within the Sinaloa Cartel who caused multi-kilogram quantities of cocaine, heroin, and methamphetamine to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. FERNANDEZ VALENCIA further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates.

*Means and Methods of the Conspiracy*

12. It was further part of the conspiracy that GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, and VALENZUELA VERDUGO pooled their collective resources and coordinated their activities to cause large quantities of cocaine and other drugs and drug precursor chemicals to be imported from Central and South American countries, including Colombia, Ecuador, Venezuela, Peru, Panama, Costa Rica, Honduras, and Guatemala, to Mexico, using various means, including cargo aircraft, private aircraft, submarines and other submersible and semi-submersible vessels, container ships, supply

8

vessels, go-fast boats, fishing vessels, buses, rail cars, tractor trailers, automobiles, and private and commercial interstate and foreign carriers. After the drugs and drug precursor chemicals arrived in Mexico, the conspirators used shared resources to unload and store the drugs in Mexico.

13.     It was further part of the conspiracy that GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, used shared networks of couriers affiliated with the Sinaloa Cartel, and coordinated their activities to cause large quantities of cocaine, heroin, and methamphetamine, at times in shipments of hundreds of kilograms at a time, to be transported from various locations in Mexico to the United States border where the drugs were then stored in multiple warehouses, stash houses, and safe houses located in the areas of Tijuana, Mexicali, and elsewhere.

14.     It was further part of the conspiracy that GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, used shared

networks of couriers affiliated with the Sinaloa Cartel, and coordinated their activities to cause drugs to be smuggled across the United States-Mexico border using multiple means, including through the use of cars, trucks, rail cars, and tunnels.

15. It was further part of the conspiracy that GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, used shared networks of couriers and stash house operators affiliated with the Sinaloa Cartel, and coordinated their activities to cause drugs to be unloaded and stored at multiple stash house, safe house, and warehouse locations in Southern California and elsewhere.

16. It was further part of the conspiracy that GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, used shared networks of couriers affiliated with the Sinaloa Cartel to cause cocaine, heroin, methamphetamine, and marijuana to be transported throughout the

United States, including to Chicago, Illinois, using various means, including cars, trucks, rail cars, and private and commercial interstate carriers. Members of the conspiracy directed the drugs to be stored in various stash houses and warehouses and then provided and distributed to additional members and associates of the Sinaloa Cartel, as well to wholesale customers, on consignment, without requiring payment at the time of delivery, in multiple locations.

17.   It was further part of the conspiracy that the cocaine, heroin, methamphetamine, and marijuana caused to be distributed by GUZMAN LOERA, ZAMBADA GARCIA, GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, and other members and associates of the Sinaloa Cartel, was further sold and distributed to additional wholesale customers in the greater Chicago, Illinois area, as well as to customers in the areas of Los Angeles, California; Detroit, Michigan; Cincinnati, Ohio; Philadelphia, Pennsylvania; Washington, D.C.; New York, New York; Columbus, Ohio; Milwaukee, Wisconsin; Boston, Massachusetts; Canada; and elsewhere.

18.   It was further part of the conspiracy that GUZMAN LOERA and ZAMBADA GARCIA, and members and associates of the Sinaloa Cartel under

them, including at times GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, used shared networks of money couriers and money launderers to cause drug proceeds to be collected from customers, counted, packaged, and transferred and laundered from the United States to Mexico, Colombia, and elsewhere using multiple means, including bulk cash smuggling, structured bank deposits, wire transfers, currency exchange transfers, alternative credit-based systems used to transfer money without the use of wires or other traditional means, goods-based systems in which items, including cars, helicopters, and airplanes, were purchased in one location and transferred to another location, and other methods.

19.    It was further part of the conspiracy that defendants GUZMAN LOERA, ZAMBADA GARCIA, GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA and other members and associates of the Sinaloa Cartel, used various means to communicate with each other in order to coordinate their drug trafficking activities, including cellular telephones, satellite telephones, computers, instant messaging applications on smart phones, and email accounts.

20.    It was further part of the conspiracy that defendants GUZMAN LOERA, ZAMBADA GARCIA, GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, and other members and associates of the Sinaloa Cartel, used coded language and other means to misrepresent, conceal and hide, and to cause to be misrepresented, concealed and hidden, the drug trafficking activities of the conspiracy, and to avoid detection and apprehension by law enforcement authorities.

21.    It was further part of the conspiracy that defendants GUZMAN LOERA, ZAMBADA GARCIA, GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, and other members and associates of the Sinaloa Cartel, possessed with intent to distribute large quantities of drugs in various locations throughout the United States and the world, including the possession of drugs later seized by law enforcement officials in the United States, including in Chicago and elsewhere in the Northern District of Illinois, the Central District of California, the Southern District of California, and elsewhere.

22.     It was further part of the conspiracy that defendants GUZMAN LOERA, ZAMBADA GARCIA, GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, HECTOR MIGUEL VALENCIA ORTEGA, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, and other members and associates of the Sinaloa Cartel, caused drug proceeds to be laundered and transferred in various locations throughout the United States and the world, including currency later seized by law enforcement in the United States, including in Chicago and elsewhere in the Northern District of Illinois, and Los Angeles, California, and elsewhere.

*Acts of Violence in Furtherance of the Conspiracy*

23.     It was further part of the conspiracy that GUZMAN LOERA, ZAMBADA GARCIA, GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, and other members and associates of the Sinaloa Cartel used various means to evade law enforcement and protect their drug distribution activities, including: obtaining guns and other weapons; bribing corrupt public officials; engaging in violence and threats of violence, including kidnapping; and intimidating with threats of violence members of law enforcement, rival drug traffickers, and members of their own drug trafficking organizations.

24.  It was further part of the conspiracy that GUZMAN LOERA, ZAMBADA GARCIA, GUZMAN SALAZAR, ZAZUETA GODOY, FELIX BELTRAN, BELTRAN LEON, VALENZUELA VERDUGO, and FERNANDEZ VALENCIA, and members and associates of the Sinaloa Cartel under them, used various means to ensure they received payment for their drug distribution activities, including violence and threats of violence.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

The SPECIAL JULY 2013 GRAND JURY further charges:

Beginning in or about May 2005, and continuing until at least in or about December 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOAQUIN GUZMAN LOERA (a/k/a "Chapo"),
ISMAEL ZAMBADA GARCIA (a/k/a "Mayo"),
JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo" and "JAGS"),
HERIBERTO ZAZUETA GODOY (a/k/a "Capi Beto"),
VICTOR MANUEL FELIX BELTRAN (a/k/a "Lic Vicc"),
JESUS RAUL BELTRAN LEON (a/k/a "Trevol" and "Chuy Raul"),
HECTOR MIGUEL VALENCIA ORTEGA (a/k/a "MV"),
JORGE MARIO VALENZUELA VERDUGO (a/k/a "Choclos"), and
GUADALUPE FERNANDEZ VALENCIA (a/k/a "Don Julio" and "Julia"),

defendants herein, did conspire with each other, with Vicente Zambada Niebla, Felipe Cabrera Sarabia, German Olivares, Manuel Fernandez Navarro, Pedro Flores, Margarito Flores, and with other persons known and unknown to the Grand Jury, knowingly and intentionally to import controlled substances into the customs territory of the United States from a place outside the United States, namely, Mexico; to import controlled substances into the United States from a place outside the United States, namely Mexico; and to manufacture and deliver controlled substances knowing and intending that the controlled substances would be unlawfully imported into the United States, namely, 5 kilograms or more of a mixture and substance containing a

16

detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Sections 952(a), 959, and 960;

In violation of Title 21, United States Code, Section 963.

## COUNT THREE

The SPECIAL JULY 2013 GRAND JURY further charges:

On or about November 13, 2008, at Northlake, in the Northern District of Illinois, Eastern Division,

JOAQUIN GUZMAN LOERA (a/k/a "Chapo") and
JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo" and "JAGS"),

defendants herein, did knowingly and intentionally distribute a controlled substance, namely, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT FOUR

The SPECIAL JULY 2013 GRAND JURY further charges:

On or about November 13, 2008, at Chicago, in the Northern District of Illinois, Eastern Division,

ISMAEL ZAMBADA GARCIA (a/k/a "Mayo"),

defendant herein, did knowingly and intentionally distribute a controlled substance, namely, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT FIVE

The SPECIAL JULY 2013 GRAND JURY further charges:

Beginning in or about May 2005, and continuing until at least in or about December 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOAQUIN GUZMAN LOERA (a/k/a "Chapo"),
ISMAEL ZAMBADA GARCIA (a/k/a "Mayo"),
JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo" and "JAGS"),
HERIBERTO ZAZUETA GODOY (a/k/a "Capi Beto"),
VICTOR MANUEL FELIX BELTRAN (a/k/a "Lic Vicc"),
JESUS RAUL BELTRAN LEON (a/k/a "Trevol" and "Chuy Raul"),
HECTOR MIGUEL VALENCIA ORTEGA (a/k/a "MV"),
JORGE MARIO VALENZUELA VERDUGO (a/k/a "Choclos"), and
GUADALUPE FERNANDEZ VALENCIA (a/k/a "Don Julio" and "Julia"),

defendants herein, did knowingly conspire with each other, and with persons known and unknown to the Grand Jury, to commit offenses in violation of Title 18, United States Code, Section 1956, namely:

1.      to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, namely felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting such financial transaction knew

that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

2.     to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside of the United States with the intent to promote the carrying on of a specified unlawful activity, namely felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

3.     to transport, transmit, and transfer a monetary instrument and funds involving the proceeds of specified unlawful activity, namely, felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a controlled substance, from a place in the United States to or through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and

the control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION ONE

The SPECIAL JULY 2013 GRAND JURY alleges:

1.    The allegations of Counts One, Two and Three of this Indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853.

2.    As a result of their violations of Title 21, United States Code, Sections 841(a)(1), 846, and 963, as alleged in the foregoing Indictment,

JOAQUIN GUZMAN LOERA (a/k/a "Chapo"),
ISMAEL ZAMBADA GARCIA (a/k/a "Mayo"),
JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo" and "JAGS"),
HERIBERTO ZAZUETA GODOY (a/k/a "Capi Beto"),
VICTOR MANUEL FELIX BELTRAN (a/k/a "Lic Vicc"),
JESUS RAUL BELTRAN LEON (a/k/a "Trevol" and "Chuy Raul"),
HECTOR MIGUEL VALENCIA ORTEGA (a/k/a "MV"), and
JORGE MARIO VALENZUELA VERDUGO (a/k/a "Choclos"), and
GUADALUPE FERNANDEZ VALENCIA (a/k/a "Don Julio" and "Julia"),

defendants herein, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2): (1) any and all property constituting or derived from, any proceeds they obtained, directly or indirectly, as a result of the violations; and (2) any and all of property used, or intended to be used, in any manner or part, to commit or facilitate the commission of the violations.

4.   The interests of the defendants, jointly and severally, subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 853, include, but are not limited to, approximately $2,000,000,000.

5.   If any of the forfeitable property described above, as a result of any act or omission by the defendants:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 21, United States Code, Section 853.

## FORFEITURE ALLEGATION TWO

The SPECIAL JULY 2013 GRAND JURY further alleges:

1.      The allegations in Count Five of this indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2.      As a result of their violation of Title 18, United States Code, Section 1956(h), as alleged in Count Five of the foregoing Indictment,

JOAQUIN GUZMAN LOERA (a/k/a "Chapo"),
ISMAEL ZAMBADA GARCIA (a/k/a "Mayo"),
JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo" and "JAGS"),
HERIBERTO ZAZUETA GODOY (a/k/a "Capi Beto"),
VICTOR MANUEL FELIX BELTRAN (a/k/a "Lic Vicc"),
JESUS RAUL BELTRAN LEON (a/k/a "Trevol" and "Chuy Raul"),
HECTOR MIGUEL VALENCIA ORTEGA (a/k/a "MV"),
JORGE MARIO VALENZUELA VERDUGO (a/k/a "Choclos"), and
GUADALUPE FERNANDEZ VALENCIA (a/k/a "Don Julio" and "Julia"),

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all right, title and interest they may have in property, real or personal, involved in such offense, or any property traceable to such property.

3.      The interests of the defendants, jointly and severally, subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 982(a)(1), include, but are not limited to, approximately $2,000,000,000.

4.      If any of the forfeitable property described above, as a result of any act or omission by defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1);

All pursuant to Title 18, United Sates Code, Section 982(a)(1).


A TRUE BILL:


_____

FOREPERSON


_____

UNITED STATES ATTORNEY


26